IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JABBAR SACHET AL-KHAFAGI, | Case No.: 3:19-cv-00669-AN |
| Plaintiff, | |
| v. | |
| | OPINION AND ORDER |
| CARI CRITES, Oregon State Correctional Institution (OSCI), Registered Nurse (RN); LORETTA IRVING, OSCI Medical Services Manager, | |
| Defendants. | |

This case arises from plaintiff Jabbar Al-Khafagi's civil rights claim brought under 42 U.S.C. § 1983. On October 18, 2024, plaintiff filed a Motion for Partial Reconsideration, ECF [198], seeking reconsideration of the Court's dismissal of Dr. Warren Roberts as a defendant and of plaintiff's punitive damages claim. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the following reasons, plaintiff's motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 54(b), the court may revise any order or other decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." *United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir. 2000).

Reconsideration of an order is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). A court should reconsider its

earlier decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). "Reconsideration motions may not be used to raise new arguments or introduce new evidence if, with reasonable diligence, the arguments and evidence could have been presented during consideration of the original ruling." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 859 (9th Cir. 2022) (citing *Kona Enters.*, 229 F.3d at 890). Ultimately, whether to grant or deny a motion for reconsideration is in the sound discretion of the district court. *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).

## BACKGROUND

Plaintiff is an adult in custody ("AIC") at Oregon State Correctional Institution ("OSCI"). Plaintiff brought this action against defendants Cari Crites ("Crites"), Loretta Irving ("Irving"), Dr. Warren Roberts ("Roberts"), and Joe Bugher ("Bugher"), alleging inadequate and delayed medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment under 42 U.S.C. § 1983. On July 29, 2024, defendants filed a Motion for Summary Judgment, ECF [131]. On October 17, 2024, the Court granted in part and denied in part defendants' motion. Op. & Order of October 17, 2024, ECF [195]. In relevant part, the Court granted summary judgment as to plaintiff's claims against Dr. Roberts and Bugher and as to plaintiff's punitive damages claim. *Id.* at 16-17, 19. Plaintiff now moves for reconsideration on two issues: the dismissal of (1) Dr. Roberts as a defendant, and (2) plaintiff's punitive damages claim.

## DISCUSSION

### A.    Dismissal of Dr. Roberts

Plaintiff argues that the Court should reconsider its dismissal of Dr. Roberts, Chief of Medicine of the Oregon Department of Corrections ("ODOC"), as a defendant on the grounds that (1) there is sufficient evidence in the record that Dr. Roberts was personally involved in plaintiff's care, and (2) there is new evidence available regarding Dr. Roberts's job duties and roles in this case.

1.      *Clear Error*

First, plaintiff argues that there is sufficient evidence in the record to at least raise a genuine dispute as to whether Dr. Roberts acted with deliberate indifference.  The Court construes plaintiff's first argument as an argument of clear error.  "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'"  *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Plaintiff refers to three of Dr. Roberts's actions to support this argument: (1) his signature on a document conditioning plaintiff's appointment at Oregon Health and Science University ("OHSU") on self-payment in April 2021, (2) his unilateral approval of plaintiff's referral to OHSU in June 2021, and (3) his signature on a denial of plaintiff's request for pain medication in October 2021.  Pl. Mot. for Partial Recons. ("Pl. Mot."), ECF [198], at 3-5.  However, none of these actions raise a genuine dispute as to whether Dr. Roberts acted with deliberate indifference.

The first two actions of approving plaintiff's appointment at and referral to OHSU show only that Dr. Roberts participated in approving medical treatment for plaintiff.  However, simply approving treatments does not show that Dr. Roberts acted with deliberate indifference with respect to plaintiff's alleged inadequate or delayed care, and plaintiff does not point to any evidence to demonstrate deliberate indifference on the part of Dr. Roberts.  To the extent that plaintiff argues that conditioning the OHSU appointment on self-payment was a functional denial or delay of medical treatment, *see* Pl. Mot. 4, plaintiff does not offer any evidence that Dr. Roberts knew that the appointment would be cost-prohibitive or that the functional denial or delay would create a substantial risk of harm to plaintiff, *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Plaintiff's conclusory assertion that Dr. Roberts "could have referred [plaintiff] to the specialists at OHSU without TLC Committee approval at any time[] but [] did not

3

do so until it was too late" is based solely on conjecture without proper evidentiary support. Pl. Mot. 4 (emphasis and footnote omitted). Finally, plaintiff's argument that "[w]hether it was consistent with the community standard of care to deny referral to a specialist at OHSU . . . is an issue [for] the jury to decide" is only true where plaintiff has presented evidence that Dr. Roberts actually denied the referral. *Id.* at 4 n.3. But plaintiff has not and cannot.; Indeed, based on the current record, it appears that Dr. Roberts approved plaintiff's referral to an OHSU specialist *less than four hours* after receiving the recommendation. *See* Decl. Heather J. Van Meter Supp. Pl. Sur-Resp. to Defs. Mot. Summ. J., ECF [172], Ex. 8. Accordingly, the actions of approving medical care for plaintiff do not demonstrate deliberate indifference.

       The third action is a denial of plaintiff's request for a non-formulary medication. The document denying that request reflects that the medication was "not medically indicated."[1] Decl. Sophia C. von Bergen Supp. Pl. Resp. to Defs. Mot. Summ. J., ECF [140], Ex. 51. The question of whether a particular form of treatment, such as administration of a medication, "is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). In such circumstances, a denial of a request for medication will evince deliberate indifference only if plaintiff shows that the decision "was medically unacceptable under the circumstances" and "was chosen in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration in original) (internal quotation marks omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Plaintiff does not offer any evidence to show that this decision was either. Accordingly, plaintiff has not demonstrated clear error.

       2.    *Newly Discovered Evidence*

       Second, plaintiff argues that there is new evidence available regarding Dr. Roberts's job duties and roles in this case. To justify reconsideration based on newly discovered evidence, the moving party must show (1) "that the evidence was discovered after the judgment"; (2) "that the evidence could not

---

[1] During summary judgment briefing, plaintiff included the document denying the medication request as an exhibit but did not identify the denial of the medication request as an act by Dr. Roberts. *See* Pl. Resp. to Defs. Mot. Summ. J. ("Pl. Resp."), ECF [139], at 11 (noting that signatures on document were "not legible").

be discovered earlier through due diligence"; and (3) "that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different." *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir. 2001)).

Plaintiff's purported new evidence includes: (1) a document describing Dr. Roberts's job duties as ODOC's medical director, including his "essential" responsibility "to monitor the health care provided and review medical records to ensure that services are timely and appropriate," as well as deposition testimony confirming the scope of those duties; and (2) Dr. Roberts's signature on a progress note from October 2019 that contains a reference to the history of surgery on plaintiff's left eye.  Pl. Mot. 6; Pl. Reply Supp. Pl. Mot. for Partial Recons. ("Pl. Reply"), ECF [215], at 3-4; *see* Decl. Sophia C. von Bergen Supp. Pl. Mot., ECF [200], Ex. A; Decl. Sophia C. von Bergen Supp. Pl. Reply ("von Bergen Reply Decl."), ECF [216], Exs. 2-3.

However, plaintiff does not show that this "newly discovered evidence" could not have been discovered earlier through due diligence.  As defendants argue, the document describing Dr. Roberts's job duties conveys information that was largely already available to plaintiff, and many of the responsibilities detailed in the document can also be found in the Oregon Administrative Rules.  The fact that plaintiff had requested "[a]ll documents containing the name(s), address(es) and telephone number(s) for all occurrence witnesses" on October 2, 2019, and that plaintiff's counsel had requested additional and updated records upon engagement in the case does not demonstrate that plaintiff had previously requested this evidence that he now proffers.  Pl. Reply 4-5.  More importantly, plaintiff does not demonstrate that the evidence is of such magnitude that the outcome would have been different.  Like other evidence in the record, the document of Dr. Roberts's job duties shows that Dr. Roberts oversaw the medical care of AICs in ODOC custody, including plaintiff.  However, without more, evidence that Dr. Roberts was a supervisor or a member of the TLC Committee is not enough to raise a genuine dispute as to whether Dr. Roberts acted with deliberate indifference.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Further, although Dr. Roberts's signature on the October 2019 progress note shows that Dr. Roberts provided medical care to

plaintiff on one occasion, Dr. Roberts's participation in a neurosurgery consult for plaintiff's back pain does not raise a genuine dispute as to whether Dr. Roberts acted with deliberate indifference to plaintiff's *eye* conditions. *See* Order of October 17, 2024, ECF [196], at 3 (granting plaintiff's seventh motion *in limine*). Accordingly, plaintiff has not presented new evidence to justify reconsideration, and plaintiff's attempt to relitigate this issue is unpersuasive.

**B.    Dismissal of Punitive Damages Claim**

Plaintiff argues that the Court should reconsider its ruling as to punitive damages because "it was incorrect, and likely a legal error" for the Court to dismiss plaintiff's claim for punitive damages. Pl. Mot. 9.  Plaintiff argues that "punitive damages are necessarily appropriate for the jury to consider" where the underlying deliberate indifference claim survives summary judgment. *Id.* at 7.

As an initial matter, this Court has not located any binding case law mandating that punitive damages "are necessarily appropriate" just because the underlying deliberate indifference claim survives summary judgment.  Punitive damages are available in a section 1983 action "when [a defendant's conduct] involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (internal quotation marks and citation omitted).  Courts have held that "[d]eliberate indifference and recklessness are similar standards." *Wellever v. Ryan*, No. CV-15-00634-PHX-JAT (JZB), 2016 WL 7187927, at *8 (D. Ariz. Dec. 12, 2016) (citing *Farmer*, 511 U.S. at 836); *see Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

The Court is persuaded by the courts' reasoning in *Wellever*; *Brown v. County of Mariposa*, No. 1:18-cv-01541-LJO-SAB, 2019 WL 1993990 (E.D. Cal. May 6, 2019); and *Paris v. Conmed Healthcare Management, Inc.*, No. 6:14-CV-1620-TC, 2017 WL 7310079 (D. Or. Nov. 28, 2017), *report and recommendation adopted*, 2018 WL 664807 (D. Or. Jan. 31, 2018).  In each of these cases, the court held that it was appropriate to deny summary judgment as to punitive damages where it also denied summary judgment as to the underlying Eighth Amendment claim.  In *Wellever*, with respect to a claim of delayed medical care, the court held:

"[T]here are genuine issues of material fact regarding [the defendant's] liability for a

> constitutional violation. If a jury concludes that she acted with callous or reckless indifference to [the p]laintiff's Eighth Amendment rights, it may assess punitive damages. Thus, [the defendant] is not entitled to summary judgment as to [the p]laintiff's claim for punitive damages."

2016 WL 7187927, at *9 (citations omitted). Similarly, in *Brown*, with respect to a claim of inadequate medical care, the court held:

> "Because the Court finds that the [p]laintiff has alleged a claim for deliberate indifference, which requires a showing of 'something akin to reckless disregard,' and the standard for the availability of punitive damages in a 1983 action includes 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless* or callous *indifference to the federally protected rights of others*,' [the p]laintiff's request for punitive damages survives."

2019 WL 1993990, at *14 (emphases in original) (citations omitted). Finally, in *Paris*, with respect to a claim of inadequate medical care, the court noted that the defendants' argument for summary judgment on punitive damages was "essentially based on [the defendants'] contention that none of the [] defendants showed deliberate indifference to [the plaintiff]'s serious medical needs[.]" 2017 WL 7310079, at *15. The court thus denied summary judgment on punitive damages because there was sufficient evidence from which a jury could find deliberate indifference on the part of the defendants with respect to the underlying Eighth Amendment claim. *Id.*

Here, the Court has already found that plaintiff has alleged a claim of deliberate indifference. Defendants' argument against punitive damages on summary judgment was based solely on the contention that none of the defendants acted with deliberate indifference. Def. Mot. Summ. J., ECF [131], at 8. Plaintiff argues that based on the record presented regarding the underlying deliberate indifference claim, the Court should also find that there is sufficient evidence from which a jury could find "reckless disregard" with respect to punitive damages. Pl. Mot. 7-8; *see Brown*, 2019 WL 1993990, at *14; *Wellever*, 2016 WL 7187927, at *9. Although deliberate indifference and reckless disregard are not identical standards, they are similar. *Wellever*, 2016 WL 7187927, at *8. Upon review, the Court is persuaded that dismissing plaintiff's punitive damages claim at this point is premature.

Defendants argue that plaintiff could have made his arguments regarding deliberate indifference and punitive damages during summary judgment briefing or oral argument but did not.

Nevertheless, the Court finds that plaintiff presented the argument, even if briefly, that his punitive damages claim should survive summary judgment based on a theory of reckless disregard. *See* Pl. Resp. 24. Accordingly, the Court finds it appropriate to defer judgment on punitive damages until plaintiff's evidence is presented at trial.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Reconsideration, ECF [198], is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that the Court defers judgment on the issue of punitive damages until plaintiff's evidence is presented at trial and DENIED as to the dismissal of Dr. Roberts as a defendant.

IT IS SO ORDERED.

DATED this 6th day of January, 2024.

Adrienne Nelson
United States District Judge